The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones and the briefs and oral arguments before the Full Commission. The appealing parties have shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the Full Commission reaches the same facts and conclusions as those reached by the Deputy Commissioner, with some modifications. Accordingly, the Full Commission affirms with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Defendant is a duly self-insured and Sedgwick of the Carolinas is the servicing agent.
4. Plaintiff allegedly sustained an injury by accident on August 5, 1997 in Wilmington, North Carolina.
5. Plaintiffs medical records were stipulated into evidence as Stipulated Exhibit 1.
6. Industrial Commission forms relating to this case were stipulated into evidence as Stipulated Exhibit 2.
7. A Form 22 was stipulated into evidence as Stipulated Exhibit 3.
8. The issue before the Commission is whether plaintiff is entitled to medical and disability compensation as a result of his allegedly compensable injury by accident.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 52 years old. Plaintiff has a high school and college education. Plaintiff has been previously employed in the sale of roofing, windows and siding.
2. Plaintiff was hired by defendant-employer as a car salesman.
3. Plaintiff served in the Air Force in Vietnam. Plaintiff underwent operations on his left arm and right hand and had other hospitalizations for health problems while in the Air Force.
4. Plaintiff had a history of low back pain prior to the incident on August 5, 1997. Plaintiffs family physician, Dr. Raj Bhat, prescribed Percocet for plaintiffs back pain. In 1996 Dr. Bhat referred plaintiff to orthopedic surgeon Dr. James Markworth. Dr. Markworth treated plaintiff for low back pain that radiated into his left leg. An MRI performed on October 14, 1996 revealed no herniated discs and no stenosis or other abnormality. Dr. Markworth diagnosed moderate degenerative disc disease. Plaintiff was treated conservatively for his low back pain.
5. On August 5, 1997 plaintiff was performing his normal duties as a salesman with defendant-employer. Plaintiff and another employee were instructed to put an automobile on an elevated ramp near the entrance of the dealership so that motorists passing by would be able to see the vehicle. After driving the automobile onto the ramp, plaintiff walked to the edge of the ramp and tried to get down. There was a 3 ½ to 4 foot drop from the edge of the ramp to the ground. Robbie Roberts, a co-worker, backed up to the ramp and plaintiff tried to grasp Mr. Roberts shoulder while he lowered himself to the ground. As plaintiff was trying to lower himself, Mr. Roberts reached behind plaintiff and grabbed him by the right knee to help him in a "piggy back fashion to come off the ramp. Mr. Roberts missed plaintiffs left knee and his left leg continued to the ground, while his right leg and right knee were held above Mr. Roberts waist. Plaintiff injured his back as a result of this accident and felt immediate pain.
6. Plaintiff returned to his cubicle in the showroom. Plaintiff informed a supervisor about his injury and went home. Plaintiff rested for the remainder of the day and following weekend.
7. Plaintiff experienced significant back pain and saw Dr. Bhat on August 11, 1997. Dr. Bhat indicated that plaintiff had radiculopathy and referred plaintiff to Dr. Markworth.
8. Plaintiff returned to work for several days. His last day worked for defendant was August 18, 1997.
9. On September 9, 1997 plaintiff was examined by Dr. Markworth. Dr. Markworth diagnosed plaintiff with probable left sciatica and lumbar spondylolis. If plaintiffs symptoms failed to respond to medication, Dr. Markworth recommended a CT myelogram or an EMG nerve conduction study.
10. On September 23, 1997, plaintiff was evaluated by Dr. Anna Bettendorf, who performed EMG and nerve conduction studies. According to the history plaintiff gave Dr. Bettendorf, plaintiff had low back, right hip, testicle and left lower extremity pain which had begun in June or July 1997. Dr. Bettendorf concluded that plaintiff had sensory motor polyneuropathy, possibly associated with chronic alcohol use. The tests showed that plaintiff had no evidence of lumbar radiculopathy or acute denervation.
11. Dr. Bettendorf did not attribute the generalized sensory motor polyneuropathy to any trauma. Dr. Bettendorf indicated that the ideal treatment plan for this condition did not include the use of narcotics. Dr. Bettendorf advocated activity, maintaining physical fitness, maintaining strength and flexibility in the spine and proper mechanics as an active approach to this condition rather than pharmacological approaches.
12. On October 1, 1997, plaintiff was re-examined by Dr. Markworth who reviewed the results of the EMG and nerve conduction studies. Plaintiffs back condition was unchanged from the 1996 MRI. Dr. Markworth indicated that plaintiff was not a candidate for any type of orthopedic procedure and that plaintiff required medical evaluation of the polyneuropathy. Dr. Markworth referred plaintiff back to Dr. Bhat, who continued to prescribe narcotics, such as Percocet and Valium, from September 29, 1997 through November 3, 1997.
13. On May 14, 1998, plaintiff was examined by Dr. Alfred A. DeMaria, a neurologist at Wilmington Health Associates. Dr. DeMaria noted a mild peripheral polyneuropathy of the undetermined etiology and referred plaintiff for a neuropathy panel and an MRI of the low back.
14. On May 18, 1998, an MRI of plaintiffs lumbosacral spine was performed and revealed mild diffuse degenerative changes in the lumbosacral spine with no evidence of central canal stenosis, foraminal stenosis or herniated disc.
15. Dr. DeMaria examined plaintiff again on June 25, 1998. Dr. DeMaria noted that the neurologic exam remained unchanged.
16. On July 31, 1998, plaintiff was examined by Dr. DeMaria for the final time. Dr. DeMaria recommended plaintiff continue his current regimen and follow up with Dr. Bhat and Dr. Paul Chipley at the Center for Pain Management.
17. Plaintiff was examined at the Center for Pain Management with complaints of low back pain, pain in his left leg, left knee and left foot. Plaintiff also had pain in his right hip, right leg and testicular pain. Plaintiff received an epidural injection at the Pain Management Center on September 21, 1998.
18. Plaintiff sought treatment from Stewart Kaplan, a chiropractor, from January 25, 1999 through February 1, 1999. Dr. Kaplan did not charge plaintiff for his services and there are minimum medical records relating to this treatment.
19. Dr. Bhat continued to provide primary care for plaintiffs condition and continued to prescribe various pain medications for plaintiff.
20. On June 9, 1999, plaintiff was re-examined by Dr. Markworth. Dr. Markworth believed plaintiffs symptoms were more indicative of neuropathy than radiculopathy and referred plaintiff to a neurologist for an evaluation or consideration of retesting relating to that condition.
21. Following the hearing before the Deputy Commissioner, plaintiff underwent an independent medical evaluation by orthopedic surgeon Dr. Cecil H. Neville on October 12, 1999. Dr. Neville performed various tests on plaintiff and received a history relating to plaintiffs pain. Dr. Neville found no evidence that plaintiff had sustained an injury on August 5, 1997 and strongly disagreed with the narcotic pain medication prescribed by Dr. Bhat. Dr. Neville did not believe that plaintiff had any permanent functional impairment as a result of his injury by accident on August 5, 1997.
22. The Commission gives greater weight to the expert opinions of Drs. Markworth, Bettendorf and Neville than to Dr. Bhat, who is not an orthopedic or neurological specialist. Therefore, there is insufficient medical evidence of record from which to prove by the greater weight that plaintiffs disability, if any, after October 1, 1997, resulted from his compensable injury by accident.
23. Plaintiffs medical treatment after October 1, 1997 was for conditions unrelated to the compensable injury by accident on August 5, 1997.
24. As a result of the compensable injury by accident, plaintiff was temporarily totally disabled and unable to return to work from August 18, 1997 until October 1, 1997. Any disability after October 1, 1997, when his symptoms were diagnosed as polyneuropathy and his low back condition remained the same as in 1996, was due to plaintiffs polyneuropathy which is unrelated to the compensable injury by accident.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On August 5, 1997, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant in that he sustained a specific traumatic incident of the work assigned. N.C. Gen. Stat. 97-2(6).
2. As a result of plaintiffs compensable injury by accident, plaintiff was temporarily totally disabled and is entitled to disability compensation at a rate of $512.00 from August 19, 1997 through October 1, 1997. Any disability plaintiff sustained after October 1, 1997 resulted from the polyneuropathy and not as a result of the compensable injury by accident. N.C. Gen. Stat. 97-29.
3. Plaintiff failed to show by the greater weight of the medical evidence any causal relationship between the compensable injury by accident and his subsequent health problems after October 1, 1997. Therefore, plaintiff is not entitled to receive further disability compensation or medical treatment. N.C. Gen. Stat. 97-25.
4. Plaintiff is entitled to payment of medical treatment by defendant up to and including Dr. Markworths examination on October 1, 1997. Plaintiffs medical expenses after October 1, 1997, are not causally related to the compensable injury by accident and shall not be borne by defendant. N.C. Gen. Stat. 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff compensation for his temporary total disability as a result of his compensable injury by accident at the rate of $512.00 per week from August 19, 1997 through October 1, 1997. Said amount shall be paid in lump sum, subject to an attorneys fee approved in Paragraph 3.
2. Defendant shall pay the medical expenses resulting from plaintiffs compensable injury by accident up to an including Dr. Markworths examination on October 1, 1997. The approved medical expenses do not include any treatment of plaintiff after this period.
3. A reasonable attorneys fee of 25% of the compensation due plaintiff under Paragraph 1 of this AWARD is approved for plaintiffs counsel and shall be paid by defendant directly to plaintiffs counsel.
4. Defendant shall pay the costs.
This ___ day of February, 2001.
 S/________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_______________ THOMAS J. BOLCH
COMMISSIONER
S/_________________ CHRISTOPHER SCOTT COMMISSIONER